**12 CIV 6619**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JULIO TARDIO, Individually and On
Behalf of All Others Similarly Situated,

        Plaintiff,

    vs.

NEW ORIENTAL EDUCATION &
TECHNOLOGY GROUP, INC., LOUIS T.
HSIEH, and MICHAEL MINHONG YU,

        Defendants.

-------------------------------------------------------x

Civil Action No:

CLASS ACTION COMPLAINT
FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

**JURY TRIAL DEMANDED**



The allegations in this Complaint are based upon Plaintiff's personal knowledge as to Plaintiff's own acts, and are based upon information and belief as to all other matters alleged herein. Plaintiff's information and belief is based upon the investigation by Plaintiff's counsel into the facts and circumstances alleged herein, including, without limitation, a review and analysis of United States Securities and Exchange Commission ("SEC") filings by New Oriental Education & Technology Group, Inc. ("EDU" or the "Company"), as well as press releases, analyst reports, public statements, news articles and other publications disseminated by or concerning EDU and the other defendants named herein (together with EDU, the "Defendants"). Many additional facts supporting the allegations herein are known only to the Defendants and/or are within their exclusive custody or control. Plaintiff believes that additional evidentiary support for the allegations herein will emerge after a reasonable opportunity to conduct discovery.

## NATURE OF THE ACTION

1. This is a federal class action on behalf of investors who suffered damages as a result of their purchases or sales of EDU option contracts and/or purchases or acquisitions of the Company's American Depository Shares ("ADSs") between July 21, 2009 and July 23, 2012, inclusive (the "Class Period"), which seeks to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. These claims are asserted against EDU and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases, analyst conference calls, on the Company's website and in filings with the SEC.

2. EDU, based in Beijing, is China's largest provider of private education services. It offers a range of educational programs, services and products consisting primarily of English

1

and other foreign language training, test preparation courses for admissions and assessment tests in the United States, the People's Republic of China ("China") and Commonwealth countries.

3.  On July 17, 2012, EDU shocked the market by announcing that the SEC had launched a formal investigation into the Company's accounting practices. Specifically, it disclosed that the SEC is investigating "whether there is a sufficient basis for the consolidation of Beijing New Oriental Education & Technology (Group) Co., a variable interest entity of the Company, and its wholly-owned subsidiaries, into the Company's consolidated financial statements."

4.  As the truth regarding the Company started settling in, unsuspecting investors watched the price of the Company's ADSs drop $7.64 per ADS on July 17, 2012, a decline of nearly 35%, with the price of EDU options contracts correspondingly affected.

5.  On July 18, 2012, Muddy Waters, LLC ("Muddy Waters"), a research firm, published a report giving EDU a strong sell rating, forecasting a significant restatement of EDU's published financial statements and the resignation of the Company's auditor.

6.  On this additional news, the price of the Company's ADSs declined $5.12 per ADS, a decline of over 35%, to close at $9.50, with the price of EDU options contracts correspondingly affected.

7.  Through this action, Plaintiff seeks to recover for himself and other Class members (defined below) the devastating losses that were suffered as a result of Defendants' fraud.

## JURISDICTION AND VENUE

8. The claims in this action arise under Sections 10(b) and 20(a) of the Exchange Act, as amended, 15 U.S.C. §§ 78j(b) and 78(t), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

9. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as many of the acts and practices complained of herein occurred in this district. In addition, EDU's ADSs were publicly traded over the New York Stock Exchange ("NYSE"), which is located in this District.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## THE PARTIES

12. Plaintiff purchased, sold or otherwise acquired EDU ADSs and EDU options contracts at prices impacted by the Defendants' fraud during the Class Period and has been damaged thereby.

13. Defendant EDU is a provider of private educational services, primarily in China. The Company is a Cayman Islands corporation, with its principal place of business located at No. 6 Hai Dian Zhong Street, Haidian District, Beijing 10080, China. The Company is listed on the NYSE under the ticker symbol "EDU."

14.     Defendant Louis T. Hsieh ("Hsieh") is and was, at all relevant times, the Company's Chief Financial Officer ("CFO") and President. Hsieh also serves on the Company's Board.

15.     Defendant Michael Minhong Yu ("Yu") is and was, at all relevant times, the Chairman of the Board of Directors ("Board") and Chief Executive Officer ("CEO"). Yu is also the founder of the Company.

16.     Hsieh and Yu are referred to herein as the "Individual Defendants." The Individual Defendants, because of their position with the Company, had the authority to control and correct the contents of EDU's public disclosures to the market.

## CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on his own behalf and a class (the "Class") consisting of all persons who purchased or otherwise acquired EDU's ADSs and/or purchased or sold EDU options contracts at prices impacted by the Defendants' fraud and who suffered damages as a result. Excluded from the Class are the Defendants named herein, members of their immediate families, any firm, trust, partnership, corporation, officer, director or other individual or entity in which a Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, heirs, successors-in-interest or assigns of such excluded persons.

18.     Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. While the exact number of Class members remains unknown at this time, Plaintiff believes that there are hundreds of members of the Class. Record owners and Class members can be notified of the pendency of this action by publication, using forms of notice similar to those customarily used in securities class actions.

4

19. Plaintiff's claims are typical of the other members of the Class because Plaintiff and all of the Class members sustained damages that arose out of the Defendants' unlawful conduct complained of herein.

20. Plaintiff will fairly and adequately protect the interests of the members of the Class, and Plaintiff has no interests that are contrary to, or in conflict with, the interests of the Class members that they seek to represent. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to ensure such protection and intends to prosecute this action vigorously.

21. The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, which could establish incompatible standards of conduct for Defendants. Questions of law and fact common to members of the Class predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the entire Class. The questions of law and fact common to the Class include, but are not limited to, the following:

    a. whether Defendants' acts violated the federal securities laws as alleged herein;

    b. whether Defendants' publicly disseminated statements during the Class Period omitted and/or misrepresented material facts;

    c. whether Defendants acted with scienter in omitting and/or misrepresenting material facts;

    d. whether the price of EDU ADSs was artificially inflated and correspondingly affected the price of EDU options contracts during the Class Period as a result of the material misrepresentations and omissions complained of herein;

    e. whether the Individual Defendants were controlling persons as alleged herein; and

   f.  whether members of the Class have sustained damages and, if so, the proper measure of such damages.

22. A class action is superior to other methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually seek redress for wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

23. The Class Period begins on July 21, 2009 when EDU issued a press release titled "New Oriental Announces Results for the Fourth Quarter and Fiscal Year Ended May 31, 2009 and Adoption of Share Repurchase Program." For the quarter, the Company reported net income of $2.6 million and net revenue of $59.4 million, as compared to net income of $1.8 million and net revenue of $40.2 million for the same period one year earlier. For the year, the Company reported net income of $61 million and net revenue of $293 million, as compared to net income of $49 million and net revenue of $201 million for the same period one year earlier. The press release further touted EDU's results by stating, in part, the following:

> "We are pleased to finish our 2009 fiscal year with a strong fourth fiscal quarter, recording revenue growth of 47.9% and even higher non-GAAP operating income growth of 175%," said Michael Yu, New Oriental's chairman and chief executive officer. "This brings our net revenue for the 2009 fiscal year to US$292.6 million, an increase of 45.6% year-over-year, and non-GAAP operating income to US$77.7 million for the fiscal year, an increase of 43.6% year-over-year."

24. On October 19, 2009, EDU filed its annual report for the period ended May 31, 2009 on Form 20-F ("20-F") with the SEC. The 20-F was signed by Defendant Yu, and reaffirmed EDU's financial results. The 20-F also contained the certifications required by Sarbanes-Oxley, signed by Yu and Hsieh, who certified:

6

1. I have reviewed this annual report on Form 20-F of New Oriental Education & Technology Group Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods present in this report;

4. Registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13-a-15(f) and 15d-15(f)) for the registrant and have:

    a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c) Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d) Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by this annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

      5.      The company's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent function):

          a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

          b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

25.    On July 19, 2010, the Company issued a press release titled "New Oriental Announces Results for the Fourth Quarter and Fiscal Year Ended May 31, 2010." For the quarter, the Company reported net income of $5.8 million and net revenue of $86.6 million, as compared to net income of $2.6 million and net revenue of $59.4 million for the same period one year earlier. For the year, the Company reported net income of $77.8 million and net revenue of $386.3 million, as compared to net income of $61 million and net revenue of $293 million for the same period one year earlier.

26.    On October 14, 2010, EDU filed its annual report for the period ended May 31, 2010 on Form 20-F with the SEC. The 20-F was signed by Yu, and again reaffirmed the Company's annual financial results and financial position. Additionally, the 20-F contained the required signed certifications by Yu and Hsieh, substantially similar to those certifications contained in ¶24 herein.

27.    On July 18, 2011, the Company issued a press release titled "New Oriental Announces Results for Fourth Quarter and Fiscal Year Ended May 31, 2011; Also Announces Four-for-One ADS Ration Change Effective August 18, 2011." For the quarter, EDU reported net income of $14.3 million and net revenue of $137.4 million, as compared to net income of

$5.8 million and net revenue of $86.6 million for the same period one year earlier. For the year, the Company reported net income of $101.6 million and net revenue of $557.9 million, as compared to net income of $77.8 million and net revenue of $386.3 million for the same period one year earlier.

28.  Also on July 18, 2011, the Company held an earnings conference call to discuss its financial results. During the call, Defendant Hsieh, further touted the Company's results:

> Fiscal year 2011 has been another solid year for New Oriental on all fronts. And I am very pleased to note that we are closing out this year with a stellar set of financial results. Finally, some real operating leverage improvement. In the fourth quarter, our revenues grew by 58.7% while profits grew by 147.8% year-over-year. GAAP operating margin improved about 340 basis points to 7.6% for the quarter and would be up more than another 100 basis points if you exclude the disposal loss from the divestments of Mingshitang School and Tomorrow New Oriental – sorry Tomorrow Oriental. These impressive metrics are particularly pleasing because they really underscore the success of our strategy throughout the second half of fiscal year 2011 to harvest the benefits of our earlier expansion efforts and improve on bottom line performance through expense controls.

29.  On October 14, 2011, EDU filed its annual report for the period ended May 31, 2011 on Form 20-F with the SEC. The 20-F was signed by Yu, and again reaffirmed the Company's annual financial results and financial position. Additionally, the 20-F contained the required signed certifications by Yu and Hsieh, substantially similar to those certifications contained in ¶24 herein.

## THE TRUTH BEGINS TO EMERGE

30.  On July 17, 2012, the Company issued a press release titled "New Oriental Announces Unaudited Financial Results for the Fiscal Quarter and Fiscal Year Ended May 31, 2012." The Company stated that its results again reflected positive results compared to the same period in the prior year. The Company also disclosed news regarding an SEC investigation, as follows:

9

On July 13, 2012, the Company was informed that the U.S. Securities & Exchange Commission (the "SEC") had issued a formal order of investigation captioned "In the Matter of New Oriental Education & Technology Group Inc." The Company believes that the investigation concerns whether there is a sufficient basis for the consolidation of Beijing New Oriental Education & Technology (Group) Co., Ltd., a variable interest entity of the Company, and its wholly-owned subsidiaries, into the Company's consolidated financial statements. The Company intends to fully cooperate with the SEC in its investigation.

31. On this news, EDU ADSs plummeted $7.64 per ADS, a decline of more than 34%, to close at $14.62 on July 17, 2012, with the price of EDU options contracts correspondingly affected.

32. On July 18, 2012, Muddy Waters published a report rating the Company a "Strong Sell" and predicted a significant restatement and an auditor resignation in the Company's near future. The report stated:

> EDU has reported 392% revenue growth since going public. The revenue growth has been built on store growth of 338% during this time. EDU tells investors that its entire store network is company-owned, but this is a lie. As recently as last month, EDU president and CFO Louis Hsieh adamantly denied that EDU has any franchisees. This report shows Hsieh's statements are patently false - EDU has numerous franchisees. However, these franchisees are not a hidden bonus for investors. Rather, they are part of a substantial fraud in EDU's accounts.
>
> It is virtually certain that EDU uses the upfront franchise and other fees to inflate its cash balances in order to receive unqualified audit opinions from its auditor.
>
> EDU's Beijing operation (which is approximately 35% of EDU's reported revenue) has prepared financial statements for 2009 - 2011 [sic] are fraudulent. EDU has submitted these financial statements to its domestic regulator, the Civil Affairs Bureau ("CAB"). It is probable that EDU used these same financials in the preparation of its U.S. filings.
>
> EDU's corporate structure is far more problematic than just a weak VIE. The schools that conduct its operations are ultimately state property. We question how EDU can consolidate them.
>
> We believe that as a result of our exposure of these problems with EDU's reporting, EDU will restate historical results - likely significantly; and, that its auditor will resign.

33.     Following the publication of the Muddy Waters report, EDU ADSs dropped $5.12 per ADS, or just over 35%, to close at $9.50, on unusually heavy trading volume, with the price of EDU options contracts correspondingly affected.

34.     On July 20, 2012, EDU announced that its Board of Directors had formed a committee to investigate the allegations contained in the Muddy Waters report.

35.     The statements issued by EDU and contained in ¶ 23 through ¶ 29 were materially false and/or failed to disclose facts known to Defendants, including that: (i) EDU improperly included in its consolidated financial statements facilities that were operated by franchisees; (ii) EDU improperly included in its financial statements a variable interest entity and its wholly-owned subsidiaries; (iii) EDU improperly included in its consolidated financial statements schools that were not owned by the Company, which had the effect of inflating EDU's financial results; (iv) EDU lacked adequate internal and financial controls, and (v) as a result, EDU's financial statements were materially false and misleading at all relevant times.

## SCIENTER

36.     As alleged herein, Defendants acted with scienter because at the time that they issued public documents and made other public statements in EDU's name, they knew or recklessly disregarded the fact that such statements were materially false and misleading and/or omitted material facts. Specifically, Defendants: (i) knew that such documents and statements would be issued or disseminated to the investing public; (ii) knew that persons were likely to rely upon those misrepresentations and omissions; and (iii) knowingly and/or recklessly participated in the issuance and/or dissemination of such statements and/or documents as primary violators of the federal securities laws. Moreover, by virtue of the Individual Defendants' senior level positions at the Company, access to material, non-public information concerning the actual

financial performance and conditions of the Company, and control over EDU's allegedly materially misleading misstatements and omissions, each Individual Defendant participated in the fraudulent scheme alleged herein, including but not limited to artificially inflating EDU's stock price.

## LOSS CAUSATION

37.     At all relevant times, EDU ADSs were traded on the NYSE stock market. As described above, Defendants' material misrepresentations and omissions had the effect of creating and maintaining an artificially inflated price for EDU ADSs that correspondingly affected the price of EDU options contracts. Those misrepresentations and omissions that were not immediately followed by an upward movement in the Company's ADSs price served to maintain the ADSs price at artificially inflated levels by maintaining and supporting a false positive perception of EDU's business, operations, performance and prospects.

38.     Defendants had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial and operational condition or to cause and direct that such information be disseminated, and to promptly correct any previously disseminated information that was materially misleading to the market and the investing public. As a result of their failure to do so, the price of EDU ADSs, and correspondingly EDU options contracts, were impacted by the Defendants fraud during the Class Period, directly causing Plaintiff and the Class to suffer damages when the truth eventually emerged.

39.     Defendants' false and misleading statements and omissions in their SEC filings and other public statements during the Class Period directly caused losses to Plaintiff and the Class. On the strength of these false statements, the Company's ADS price was artificially inflated to a Class Period high of $34.77 per ADS on September 14, 2011, and the price of EDU options contracts was correspondingly affected.

40. As the truth began to emerge regarding the true financial condition of EDU, the price of EDU ADSs declined, and EDU options contracts were correspondingly affected, as the market processed each set of previously undisclosed facts. Each such disclosure removed a portion of the artificial inflation in the price of EDU's ADSs, and correspondingly affected the price of EDU options contracts, directly causing Plaintiff and other Class members to suffer damages. On July 18, 2012, EDU ADSs declined to a close of $9.50 per ADS, a drop of approximately 73% from the Class Period high, and the price of EDU options contracts was correspondingly affected.

41. Until shortly before Plaintiff filed this Complaint, he was unaware of the facts alleged herein and could not have reasonably discovered the Defendants' misrepresentations and omissions by the exercise of reasonable diligence.

## APPLICABILITY OF THE FRAUD ON THE MARKET DOCTRINE

42. At all relevant times, the market for EDU ADSs and/or EDU options contracts was an efficient market for the following reasons, among others:

   a. EDU ADSs were listed and actively traded on the NYSE, a highly efficient national market;

   b. As a registered and regulated issuer of securities, EDU filed periodic reports with the SEC, in addition to the frequent voluntary dissemination of information;

   c. EDU regularly communicated with public investors through established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures such as communications with the financial press and other similar reporting services;

   d. EDU was followed by multiple analysts, which followed EDU's business and wrote reports which were publicly available and affected the public marketplace;

    e.   The material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of EDU ADSs and options contracts; and

    f.   Without knowledge of the misrepresented or omitted facts, Plaintiff and other members of the Class purchased or sold EDU ADSs and options contracts between the time the Defendants made the material misrepresentations and omissions and the time that the truth was revealed, during which time the price of EDU ADSs and options contracts was impacted by Defendants' misrepresentations and omissions.

43.    As a result of the above, the market for EDU's ADSs and EDU options contracts promptly digested current information with respect to the Company from all publicly available sources and reflected such information in the security's price. Under these circumstances, all EDU investors during the Class Period suffered similar injuries through their purchases and sales at prices which were artificially inflated by the Defendants' misrepresentations and omissions. Thus, a presumption of reliance applies.

## NO SAFE HARBOR

44.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made and/or were statements of historical fact. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the

forward-looking statement was authorized and/or approved by an executive officer of EDU who knew that those statements were false when made.

## FIRST CAUSE OF ACTION
### (Violation of Section 10(b) and Rule 10b-5)

45.     Plaintiff repeats and re-alleges each allegation above as if fully set forth herein.

46.     This claim is brought under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against EDU and the Individual Defendants (the "Section 10(b) Defendants"). The Section 10(b) Defendants (1) employed devices, schemes and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading; and (3) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiff and the Class, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

47.     The Section 10(b) Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal non-public, adverse material information about the Company's financial condition as reflected in the misrepresentations and omissions set forth above.

48.     The Section 10(b) Defendants each had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth by failing to ascertain and to disclose such facts even though such facts were available to them, or deliberately refrained from taking steps necessary to discover whether the material facts were false or misleading.

49. As a result of the Section 10(b) Defendants' dissemination of materially false and misleading information and their failure to disclose material facts, Plaintiff was misled into believing that the Company's financial statements were true, accurate, and complete.

50. Plaintiff and the Class purchased or otherwise acquired EDU ADS's and/or purchased or sold EDU options contracts, without knowing that the Section 10(b) Defendants had misstated or omitted material facts about the Company's financial performance or prospects. In so doing, Plaintiff and the Class relied directly or indirectly on false and misleading statements made by the Section 10(b) Defendants, and/or an absence of material adverse information that was known to Section 10(b) Defendants or recklessly disregarded by them but not disclosed in the Section 10(b) Defendants' public statements. Plaintiff and the Class was damaged as a result of his reliance on the Section 10(b) Defendants' false statements and misrepresentations and omissions of material facts.

51. At the time of the Section 10(b) Defendants' false statements, misrepresentations and omissions, Plaintiff and the Class were ignorant of their falsity and believed them to be true. Plaintiff and the Class would not otherwise have purchased and/or sold EDU ADSs and/or EDU options contracts had they known the truth about the matters discussed above.

52. Plaintiff is filing this action within two years after discovery of the facts constituting the violation, including facts establishing scienter and other elements of Plaintiff's and the Class's claims, and within five years after the violations with respect to Plaintiff's and the Class's investments.

53. By virtue of the foregoing, the Section 10(b) Defendants have violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of the Section 10(b) Defendants' wrongful conduct, Plaintiff and the Class have suffered damages in connection with their purchase and/or sales of EDU ADSs and EDU options contracts.

## SECOND CAUSE OF ACTION
### (Violation of Section 20(a) of the Exchange Act)

55. Plaintiff repeats and re-alleges each allegation above as if fully set forth herein.

56. Each of the Individual Defendants, by reason of their status as senior executive officers and directors of EDU, directly or indirectly, controlled the conduct of the Company's business and its representations to Plaintiff and the Class, within the meaning of § 20(a) of the Exchange Act (the "Section 20(a) Defendants"). The Section 20(a) Defendants directly or indirectly controlled the content of the Company's SEC statements and press releases related to Plaintiff's and the Class's investments in EDU ADSs and EDU options contracts within the meaning of § 20(a) of the Exchange Act. Therefore, the Section 20(a) Defendants are jointly and severally liable for the Company's fraud, as alleged herein.

57. The Section 20(a) Defendants controlled and had the authority to control the content of the Company's SEC statements and press releases. Because of their close involvement in the everyday activities of the Company, and because of their wide-ranging supervisory authority, the Section 20(a) Defendants reviewed or had the opportunity to review these documents prior to their issuance, or could have prevented their issuance or caused them to be corrected.

58. The Section 20(a) Defendants knew or recklessly disregarded the fact that EDU's representations were materially false and misleading and/or omitted material facts when made. In so doing, the Section 20(a) Defendants did not act in good faith.

59. By virtue of their high-level positions and their participation in and awareness of EDU's operations and public statements, the Section 20(a) Defendants were able to and did influence and control EDU's decision-making, including controlling the content and dissemination of the documents that Plaintiff and the Class contends contained materially false and misleading information and on which Plaintiff and the Class relied.

60. The Section 20(a) Defendants had the power to control or influence the statements made giving rise to the securities violations alleged herein, and as set forth more fully above.

61. As set forth above, the Section 10(b) Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5, thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Section 20(a) Defendants are also liable pursuant to § 20(a) of the Exchange Act.

62. As a direct and proximate result of the Section 20(a) Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their purchases and/or sales of EDU ADSs and/or EDU options contracts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on his own behalf, and on behalf of the Class, prays for relief and judgment including:

A. Determining that Counts I and II of this action are eligible for class treatment under Federal Rules of Civil Procedure 23, certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against Defendants, jointly and severally, for all damages sustained as a result of

Defendants' wrongdoing, in an amount to be determined at trial, including pre-judgment and post-judgment interest, as allowed by law;

  C. Awarding extraordinary, equitable and/or injunctive relief as permitted by law (including, but not limited to, rescission);

  D. Awarding Plaintiff and the Class their costs and expenses incurred in this action, including reasonable counsel fees and expert fees; and

  E. Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all triable claims.

Dated: New York, NY

  August 29, 2012

        **FARUQI & FARUQI, LLP**

        _/s/ Richard W. Gonnello_
        Richard W. Gonnello
        Francis P. McConville
        369 Lexington Avenue, 10th Floor
        New York, NY 10017
        Tel: (212) 983-9330
        Fax: (212) 983-9331
        E-mail: rgonnello@faruqilaw.com
            fmcconville@faruqilaw.com

        _Counsel for Plaintiff Julio Tardio_